IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

BRADLEY C. BURCHFIELD                                                                    PLAINTIFF

v.                                            Civil No. 6:20-CV-06121

SHERIFF MIKE MCCORMICK, CHIEF                                                      DEFENDANTS
ELROD, JOHN DOE JAIL DOCTOR,
NURSE B. JOHNSON, NURSE BETTY
LNU, GOVERNOR ASA HUTCHINSON,
ATTORNEY GENERAL LESLIE
RUTLEDGE, ARRESTING OFFICER JOHN
DOE, PUBLIC DEFENDER TIM
BECKHAM, MEMBERS OF THE UNITED
STATES CONGRESS, PRESIDENT
DONALD TRUMP, JAK MA (Owner of
Alibaba.com and Alibabaexpress.com), JOHN
DOE DIRECTOR OF THE DEA,
PROSECUTING ATTORNEY TRENT
DANIELS, JUDGE HERNSBERGER,
JUDGE WRIGHT, JUDGE OHMS,
ATTORNEY GENERAL WILLIAM BARR

## **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

This is a civil rights action provisionally filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Robert T. Dawson, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

The case is before the Court for preservice screening under the provisions of the Prison Litigation Reform Act (PLRA). Pursuant to 28 U.S.C. § 1915A, the Court has the obligation to screen any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a).

## I. BACKGROUND

Plaintiff filed his Complaint on October 15, 2020. (ECF No. 1). He is currently incarcerated in the Garland County Detention Center (GCDC) for a parole violation, which he states has been dropped, and pending criminal charges for possession of "methamphetamine (isopropyl benzylamine)."[1] (*Id*. at 3).

Plaintiff characterizes his first claim as one for "excessive force; right to freedom of confinement; Ex Post Facto Provision; Sentencing Reform Act, Collusion," and alleges it occurred on September 7, 2020, the date of his arrest. (*Id*. at 7). He names President Donald Trump, Jack Ma, the United States Congress, United States Senate, Sheriff McCormick, John Doe Arresting Hot Springs Police Officer, Governor Asa Hutchinson, Attorney General Leslie Rutledge, John Doe Director of the DEA, Prosecuting Attorney Trent Daniels, Public Defender Tim Beckham, Judge Wright, Judge Hernsberger, and Judge Ohm as Defendants for this claim. (*Id*.). The substance of this claim is that Congress signed a trade agreement with China to import and export ephedrine-based products such as isopropyl benzylamine without legal liability. Plaintiff states that "[p]er the DEA website these products are legal. Yet the State of Arkansas continues to disregard laws of Congress, Senate, and United States to incarcerate Arkansans." (*Id*.). Plaintiff further alleges that in 2020, Arkansas reduced possession of less than two grams of methamphetamine to a misdemeanor, and the DEA website states that Mexican drugs are ninety-percent isopropyl benzylamine, which is legal, yet Arkansas charges for the legal diluent. (*Id*. at 8). Plaintiff brings these claims against the named Defendants in both their official and personal capacities. (*Id*.).

---

[1] The Court reviewed Plaintiff's state court records. In *State v. Burchfield*, Case No. 26CR-20-692, Plaintiff is charged with one count of possession of methamphetamine and one count of possession of drug paraphernalia. The criminal information sheet described the drug possession count as possessing methamphetamine with an aggregate weight, including an adulterant or diluent, of more than two grams but less than ten grams. (Arkansas Court Connect, last accessed Nov. 6, 2020).

Plaintiff characterizes his second claim as one for "Denial of Medical Care; denial of access to the courts; freedom from confinement; 8th Amendment Cruel and Unusual," and alleges these violations occurred on September 7th and October 8th through 10th-of 2020. (*Id*. at 8). He names Nurse B. Johnson, John Doe Jail Doctor, Nurse Betty, Sheriff McCormick, Chief Elrod, and John Doe Arresting Hot Springs Police Officer. Plaintiff alleges that he was denied the "standard" intake health tests, specifically HIV, hepatitis, and COVID-19. (*Id*.). He alleges he was placed in "24/7" lockdown and was not permitted to shower or order envelopes. (*Id*.). He further alleges that the John Doe Jail Doctor ordered bloodwork for blood pressure and because his white cell count was off, and Nurse B. Johnson refused to do the bloodwork, but signed him up for health insurance instead. He further alleges that GCDC does not test kitchen workers for hepatitis, there are no tuberculosis lights in the facility, and no COVID-19 tests have been done in the county. (*Id*.) He alleges a deputy told him one night that there have not been any COVID-19 cases because they have not administered any tests. (*Id*. at 9). He alleges that a Deputy Sykes tested positive, but was not quarantined before he came back to work. Plaintiff does not allege how he knew that Deputy Sykes was positive, and does not state what disease he tested positive for, although the Court will presume COVID-19 due to the quarantine reference. He further alleges that none of his grievances have been answered by the grievance coordinator. (*Id*.). Plaintiff brings these claims against the named Defendants in both their official and personal capacities. (*Id*.).

Plaintiff characterizes his third claim as "denial of access to courts; ineffective counsel; collusion," and alleges these events occurred on September 7th and October 5th through 10th of 2020. (*Id*. at 9). He names Public Defender Tim Beckham, Prosecuting Attorney Trent Daniels, Judge Hernsberger, Judge Wright, and Judge Ohm as Defendants. Plaintiff alleges that he appeared in Court on September 10, 2020 for his first appearance, plead not guilty, and the only question he answered for his Public Defender was his affidavit of indigency. (*Id*.). He did not

waive his right to a speedy trial, and he fired his Public Defender and his successors on or about October 5, 2020.  As of October 10, 2020, he has not had any contact from the Court or his "lawyer." (*Id*.).  Plaintiff brings these claims against the named Defendants in both their official and personal capacities. (*Id*.).

Plaintiff seeks compensatory and punitive damages, relief from confinement, review of all cases in which the federal and state actors have been involved in the past, a review of all federal and state inmates convicted by these actors, and that any monetary awards be put into a fiduciary account for drug court and rehabilitation as opposed to being given to the Department of Correction. (*Id*. at 11).

## II.  LEGAL STANDARD

Under the PLRA, the Court is obligated to screen the case prior to service of process being issued.  The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or, (2) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded ... to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  Even a *pro se* Plaintiff must allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

## III.  ANALYSIS

### A.  Private Citizen/Private Corporation

Plaintiff's claims against Jak Ma, owner of Alibaba.com and Alibaba Express, are subject to dismissal because these are Chinese companies owned by a Chinese citizen,[2] and Plaintiff has alleged no facts to support a claim that Jack Ma or his companies were state actors.  Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  In order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege each defendant acted under color of state law and that he or she violated a right secured by the constitution.  *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999).  Plaintiff makes no actual allegation against Defendant Ma, and the only one to be inferred is that the company sold ephedrine-based products such as isopropyl benzylamine.  Because he has not alleged any fact which would permit the inference that Defendant Ma or his companies are state actors, his claim against Ma is subject to dismissal.

### B.  Federal Officials

Section 1983 permits a claim for relief only against persons who acted under color of state law.  Federal officials acting pursuant to federal law, therefore, are generally not subject to suit under § 1983.  *See McNally v. Pulitzer Pub. Co.*, 532 F.2d 69, 76 (8th Cir. 1976) ("42 U.S.C. s. 1983 is inapplicable to persons acting under color of federal law.").  Here, Plaintiff's only allegation against federal officials is found in his first claim, where he makes reference to a federal trade agreement with China.  Thus, his claims against the United States Congress, the United States

---

[2] Plaintiff identifies Jack Ma as a "Chinese Representative."  (ECF No. 1 at 5).  Research by the Court indicates Jack Ma is a Chinese citizen and Alibaba is a Chinese company.  Encyclopaedia Britannica, https://www.britannica.com/biography/Jack-Ma; Li Yuan, *Alibaba's Jack Ma, China's Richest Man, to Retire From Company He Co-Founded*, https://www.nytimes.com/2018/09/07/technology/alibaba-jack-ma-retiring.html.

Senate, President Donald Trump, John Doe Director of the Drug Enforcement Agency, and United States Attorney General William Barr are subject to dismissal.

### C. State Officials – Official Capacity Claims

Plaintiff's official capacity claims against Arkansas state officials are subject to dismissal. States and state agencies are not "persons" subject to suit under § 1983. *Howlett v. Rose,* 496 U.S. 356 (1990); *Will v. Mich. Dept. of State Police*, 491 U.S. 58 (1989); *McLean v. Gordon*, 548 F.3d 613, 618 (8th Cir. 2008). "This bar exists whether the relief sought is legal or equitable." *Williams v. Missouri,* 973 F.2d 599, 599-600 (8th Cir. 1992) (citing *Papasan v. Allain,* 478 U.S. 265, 276 (1986)). "Congress did not abrogate constitutional sovereign immunity when enacting the law that was to become section 1983." *Burk v. Beene*, 948 F.2d 489, 493 (8th Cir. 1991) (citing *Quern v. Jordan,* 440 U.S. 332, 342 (1979)). "A suit against state employees in their official capacities is the functional equivalent of a suit against the State." *Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2013). As Arkansas Governor Asa Hutchinson and Arkansas Attorney General Leslie Rutledge, are, by definition, Arkansas state employees, Plaintiff's official capacity claims against them are subject to dismissal.

### D. State Officials – Personal Capacity Claims

Plaintiff's personal capacity claims against state officials are subject to dismissal. A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978). "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). "Liability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability

of the supervisory defendants, [Plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of his constitutional rights." *Clemmons v. Armontrout,* 477 F.3d 962, 967 (8th Cir. 2007) (quoting *Mayorga v. Missouri,* 442 F.3d 1128, 1132 (8th Cir. 2006)).

Here, Plaintiff has named the Governor of Arkansas, Asa Hutchinson, and the State Attorney General, Leslie Rutledge, as Defendants, but has made no factual allegations indicating personal involvement or direct responsibility for the deprivation of his rights against them. Instead, he states only that Arkansas is breaking federal law. Thus, his claims against them are subject to dismissal.

### E.  Judges

Judge Hernsberger, Judge Wright, and Judge Ohm are all alleged by Plaintiff to be Arkansas State Court judges and are immune from suit. *Mireles v. Waco*, 502 U.S. 9, 11, 112 S. Ct. 286, 116 L. Ed. 2d 9 (1991) ("Judicial immunity is an immunity from suit, not just from ultimate assessment of damages."). *See also Duty v. City of Springdale,* 42 F.3d 460, 462 (8th Cir. 1994). "Judges performing judicial functions enjoy absolute immunity from § 1983 liability." *Robinson v. Freeze*, 15 F.3d 107, 108 (8th Cir. 1994). "A judge will not be deprived of immunity because the action [s]he took was in error, was done maliciously, or was in excess of [her] authority." *Stump v. Sparkman*, 435 U.S. 349, 356-57, 98 S. Ct. 1099, 55 L. Ed. 2d 331 (1978).

Judicial immunity is overcome in two situations:  (1) if the challenged act is nonjudicial; and (2) if the action, although judicial in nature, was taken in the complete absence of all jurisdiction. *Mireles*, 502 U.S. at 11. It is clear from the allegations of the Complaint that neither situation applies here.

### F.  Prosecuting Attorney

Plaintiff's claims against Prosecutor Trent Daniels must be dismissed because prosecutors are immune from suit. The United States Supreme Court in *Imbler v. Pachtman*, 424 U.S. 409,

7

431, (1976), established the absolute immunity of a prosecutor from a civil suit for damages under 42 U.S.C. § 1983 "in initiating a prosecution and in presenting the State's case." *Id*. at 427. This immunity extends to all acts that are "intimately associated with the judicial phase of the criminal process." *Id.* at 430; s*ee also Buckley v. Fitzsimmons*, 509 U.S. 259 (1993) (Prosecutor acting as an advocate for the state in a criminal prosecution is entitled to absolute immunity while a prosecutor acting in an investigatory or administrative capacity is only entitled to qualified immunity). The only claim that can be inferred against the prosecutor is that he brought a felony charge against Plaintiff rather than a misdemeanor charge. The decision of what charges to bring against a criminal Defendant rests squarely within the prosecutor's role of initiating a case. Defendant Daniels is, therefore, immune from suit.

### G. Public Defender

Defendant Tim Beckham, Plaintiff's appointed Public Defender, is not subject to suit under § 1983. A § 1983 complaint must allege that each defendant, acting under color of state law, deprived plaintiff of "rights, privileges or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see also DuBose v. Kelly,* 187 F.3d 999, 1002 (8th Cir. 1999). Defendant Beckham was not acting under color of state law while representing Plaintiff in his criminal proceedings. *Polk County v. Dodson,* 454 U.S. 312, 324 (1981) (neither public defenders nor privately retained defense counsel act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in criminal proceedings"). Thus, Plaintiff has failed to state cognizable claims under § 1983 against Defendant Beckham.

### H. No Grievance Response

Plaintiff's claim that the GCDC grievance coordinator failed to respond to grievances fails to state a plausible claim. The Eighth Circuit has made it clear prisoners do not have a constitutional right to a prison grievance procedure. *Lomholt v. Holder*, 287 F.3d 683, 684 (8th

Cir. 2002) (no claim when "various defendants denied his grievances or otherwise refused to help him"); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir.1993) (no claim when defendants failed to timely and properly respond to a grievance). Thus, a prison official's failure to properly respond to a grievance, standing alone, is not actionable under § 1983. *Id.* As there is no constitutional right to either a grievance procedure or a grievance response, Plaintiff failed to state a plausible claim based on any lack of response to his grievances.

### I. Denial of Access to Courts

Plaintiff alleged that he was denied envelopes and was denied the right to speak to his attorney for an unstated period of time upon his arrest. The Supreme Court has held "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828 (1977). Nevertheless, *Bounds* "did not create an abstract, freestanding right to a law library or legal assistance." *Lewis v. Casey,* 518 U.S. 343, 351 (1996). Instead, prison officials must provide inmates with "meaningful access to the courts," *Bounds,* 430 U.S. at 824, and providing a law library is merely one way to comply with this obligation. *See Bear v. Fayram,* 650 F.3d 1120, 1123 (8th Cir. 2011) (the constitutional requirement of access to the courts may be satisfied in a number of ways including, prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other methods).

An inmate cannot prevail on an access-to-courts claim unless he can demonstrate he suffered prejudice or actual injury as a result of the prison officials' conduct. *See Lewis,* 518 U.S. at 351-2; *see also Farver v. Vilches,* 155 F.3d 978, 979-80 (8th Cir. 1998) (per curiam); *Klinger v. Dep't of Corr.,* 107 F.3d 609, 617 (8th Cir. 1997) (to prevail on access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to library is complete and systematic);

9

*McMaster v. Pung,* 984 F.2d 948, 953 (8th Cir. 1993). "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim.'" *Hartsfield v. Nichols,* 511 F.3d 826, 831 (8th Cir. 2008) (citations omitted).

Here, Plaintiff has failed to allege any actual injury or prejudice to his pending criminal case. He was able to file the instant Complaint with the Court. Accordingly, Plaintiff has failed to state a cognizable denial of access-to-courts claim.

### J. Conditions of Confinement

Plaintiff failed to state any cognizable conditions of confinement claims based on the denial of a shower, the lack of tuberculosis lights in the facility, or the presence of Deputy Sykes in GCDC. "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *Cty. of Sacramento v. Lewis,* 523 U.S. 833 (1998) (citation omitted). The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishment. U.S. Const. amend. VIII. Detention centers must provide pretrial detainees with "reasonably adequate sanitation, personal hygiene, and laundry privileges . . ." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012) (quoting *Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989)). The Eighth Amendment also prohibits punishments that deprive inmates of the minimal civilized measure of life's necessities. *Smith v. Copeland,* 87 F.3d 265, 268 (8th Cir. 1996); *see also Hall v. Dalton,* 34 F.3d 648, 650 (8th Cir. 1994) ("[I]n this circuit, the standards applied to Eighth Amendment and Fourteenth Amendment claims have been the same.").

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *Revels v. Vincenz,* 382 F.3d 870, 875 (8th Cir. 2004) (citing *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels,* 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the Plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Id*. The standards against which a court measures prison conditions are "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble,* 429 U.S. 97, 102 (1976). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *Farmer v. Brennan,* 511 U.S. 825, 832 (1994). As is the case with all Eighth Amendment claims, a prisoner must suffer some actual injury in order to receive compensation. This injury must be greater than *de minimis*. *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).

The Eighth Circuit has held that the denial of shower privileges, for a short period of time, does not constitute an Eighth Amendment violation. *See Abernathy v. Perry,* 869 F.2d 1146, 1149 (8th Cir. 1989) (providing an inmate with only two showers per week was not an Eighth Amendment violation); *Johnson v. Norris*, 2:08CV00052 JTR, 2008 WL 2952015, at *3 (E.D. Ark. July 29, 2008) ( no violation where Plaintiff was denied a shower for only eight days); *Jones v. Houston,* Case No. 4:06CV03314, 2007 WL 3275125, *8 (D. Neb. Nov. 2, 2007) (denial of showering privileges for thirteen days was not an Eighth Amendment violation); *McCoy v. Goord*, 255 F. Supp. 2d 233, 260 (S.D.N.Y. 2003) ("a two-week suspension of shower privileges does not suffice as a denial of 'basic hygienic needs'"). Here, Plaintiff did not allege sufficient facts to support a claim based on the denial of a shower because he did not allege that he was denied a

11

shower at any point except upon intake, and did not specify how long he was denied a shower at that time. *See Martin*, 780 F.2d at 1337 (Even a *pro se* Plaintiff must allege specific facts sufficient to support a claim.).

Plaintiff alleges GCDC has no tuberculosis lights, performs no hepatitis testing of kitchen workers, and performs no COVID-19 testing. He further alleges that a Deputy Sykes tested positive, but was not quarantined before he came back to work. Plaintiff does not allege how he knew that Deputy Sykes was positive for COVID-19. Nor does Plaintiff allege that he had any interaction with Deputy Sykes. As Plaintiff failed to allege that he suffered any injury due to the lack of tuberculosis lights, the lack of testing, or the presence of Deputy Sykes in GCDC, he failed to allege an Eighth Amendment claim. *See Irving*, 519 F.3d at 448 (prisoner must suffer an actual injury to state an Eighth Amendment claim).

Accordingly, Plaintiff failed to state any cognizable conditions of confinement claims.

### K. Denial of Medical Testing

Plaintiff alleges he was denied "standard" intake medical testing when he entered GCDC, and the nurse signed him up for health insurance rather than doing the bloodwork ordered by the jail doctor. The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those

needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (citation omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id*.

It is well settled that "[a] prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal citation omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* (internal citations omitted). As is the case with all Eighth Amendment claims, a prisoner must suffer some actual injury in order to receive compensation. This injury must be greater than *de minimis*. *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).

Here, Plaintiff failed to allege that he had an objectively serious medical need diagnosed by a physician as requiring treatment, instead alleging only that he was denied "standard" intake testing and the doctor wanted to check his bloodwork. He also failed to allege that he suffered any actual injury from the lack of testing or alleged refusal to do bloodwork. Instead, he merely disagreed with the medical intake process at GCDC. To the extent his allegations could be

13

construed to allege a delay in medical care, his allegation also fails because he did not allege that either issue was acute or that he suffered any lasting detrimental effect from a delay in either testing or bloodwork. *See Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (citations omitted) ("A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials 'ignored an acute or escalating situation or that [these] delays adversely affected his prognosis.'").

Accordingly, Plaintiff failed to state any cognizable denial or delay of medical care claims.

## IV.  CONCLUSION

Accordingly, I recommend that Plaintiff's Complaint be DISMISSED WITHOUT PREJUDICE. The dismissal of this action should constitute a "strike" under 28 U.S.C. § 1915(g), and it is recommended that the Clerk be directed to place a § 1915(g) strike flag on the case.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court**.

DATED this 17th day of November 2020.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE